ATTORNEY FOR APPELLANT

Donald J. Hickman

Bedford, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Modisett

Attorney General of Indiana

Phillip D. Hatfield

Deputy Attorney General

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

)

LARRY E. JAGGERS, ) 

)

Appellant (Defendant below), ) Indiana Supreme Court

) Cause No. 47S01-9711-CR-564 

v. )

) Indiana Court of Appeals 

STATE OF INDIANA, ) Cause No. 47A01-9611-CR-363

)

Appellee (Plaintiff below). ) 

)

­

APPEAL FROM THE LAWRENCE SUPERIOR COURT II

The Honorable William G. Sleva, Judge

Cause No. 47E01-9307-CF-457

­

ON PETITION TO TRANSFER

BOEHM, Justice.

Larry E. Jaggers was convicted of possession of more than thirty grams of marijuana, a Class D felony.
(footnote: 1)  The trial court sentenced Jaggers to six months imprisonment and two years supervised probation.  We grant transfer to address the interplay between the “good faith” exception to the exclusionary rule and the warrant statute, Indiana Code § 35-33-5-2.  Because we hold that the evidence used to convict Jaggers was inadmissible, we reverse the conviction and remand for further proceedings.   

Factual and Procedural History

On July 12, 1993, an Indiana state trooper received an anonymous telephone call asserting that a Lawrence Jaggers was cultivating and trafficking marijuana in his house in Mitchell, Indiana.  The caller made two claims: (1) he had personally seen marijuana in and around Jaggers’s house on numerous occasions over the course of several years, most recently in the prior week; and (2) Jaggers was growing marijuana on two plots of land away from his residence.  The caller described the house and the location of the off-site plots, including approximately how many marijuana plants would be found there.  Armed with this information, within the next two days the officer went to Jaggers’s house and found that the caller’s description of the house was accurate.  A truck in the driveway was registered to Lawrence E. Jaggers of Lawrence County.  On July 15, the officer drove to each of the described plots and found marijuana growing there.  Both plots were on land easily accessible to the public, one approximately two miles and the other six miles from Jaggers’s house.  Based on the officer’s testimony at a probable cause hearing later that day (described in Part II 
infra
), a magistrate immediately issued a warrant authorizing a search of the described house for “[m]arijuana, ‘grow’ lights, and records and other similar written material recording or otherwise reflecting illegal trafficking in marijuana.”  The officer executed the warrant at Jaggers’s home that afternoon.  The search uncovered a substantial quantity of marijuana and related paraphernalia.  Jaggers was convicted in a bench trial and he appealed.  With one judge dissenting, the Court of Appeals affirmed.  
Jaggers v. State
, 681 N.E.2d 793 (Ind. Ct. App. 1997) (unpublished table decision). 

Standard of Review
    

In deciding whether to issue a search warrant, “[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.”  
Illinois v. Gates
, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  The duty of the reviewing court is to determine whether the magistrate had a “substantial basis” for concluding that probable cause existed.  
Id.
 at 238-39.  “[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate’s determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination” of probable cause.  
Houser v. State
, 678 N.E.2d 95, 99 (Ind. 1997).  “Reviewing court” for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision.  
Id.
 at 98.  In this review, we consider only the evidence presented to the issuing magistrate and not 
post hac
 justifications for the search.  
Seltzer v. State
, 489 N.E.2d 939, 941 (Ind. 1986).

I.  Use of Hearsay to Establish Probable Cause

Jaggers moved unsuccessfully before trial to suppress the evidence seized as a result of the search.  He now challenges the denial of that motion and the admission of the evidence over his objection at trial.  Jaggers argues that the warrant did not issue upon probable cause because the informant’s claim that Jaggers was cultivating and trafficking marijuana inside his home was entirely uncorroborated.  The State responds that the officer corroborated the anonymous caller’s statements sufficiently to establish probable cause.  Jaggers’s argument is based on both the Fourth Amendment and Indiana Code § 35-33-5-2.  He does not assert any claim under Article I, Section 11 of the Indiana Constitution.

   A.  
Fourth Amendment requirements for probable cause

Gates
 instructed reviewing courts to accord magistrates greater flexibility and deference in determining the existence of probable cause based on hearsay: “Informants’ tips doubtless come in many shapes and sizes from many different types of persons. . . .  Rigid legal rules are ill-suited to an area of such diversity.”  
Gates
, 462 U.S. at 232.  However, 
Gates
 was also unequivocal that uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant.  
Id.
 at 227.  The hearsay must exhibit some hallmarks of reliability.  
Gates
 indicated that the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant’s statements; (3) some basis for the informant’s knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted.  Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay.       

Even under 
Gates
’s deferential standard of review, the determination of probable cause in this case lacked a substantial basis.  The independent police investigation corroborated the informant’s assertion that marijuana was being grown on two plots of land miles from Jaggers’s residence and that Jaggers appeared to live where the informant said he lived -- nothing more.  These facts did not establish any corroboration of the anonymous claim that Jaggers’s house contained evidence of crime.  Nor did they confirm that the off-site marijuana plants belonged to Jaggers.  
Cf.
 
Kail v. State
, 528 N.E.2d 799, 804-08 (Ind. Ct. App. 1988) (search warrant for defendant’s house issued on probable cause where defendant was arrested at marijuana patch away from his residence and facts supported conclusion that growing paraphernalia would be found in his house).  The critical claim here -- that Jaggers was cultivating and trafficking marijuana in his house and also controlled the off-site plots -- was entirely uncorroborated.    

Equally critically, the informant’s credibility was entirely unknown.  Use of anonymous informants to establish probable cause often presents heightened reliability concerns.  Because there is no possibility of criminal liability for filing a false police report, the informant has no incentive to be truthful.  
See
 
Gates
, 462 U.S. at 233-34 (“[I]f an unquestionably honest citizen comes forward with a report of criminal activity--which if fabricated would subject him to criminal liability--we have found rigorous scrutiny of the basis of his knowledge unnecessary.”) (citation omitted).  Anonymity effectively shields from scrutiny any possible ulterior motives; the situation is rife with the potential for pranks and mischief.  Accordingly, some corroboration of the accusations is all the more essential when the informant is anonymous.  
See
, 
e.g.
, 
Sanders v. State
, 576 N.E.2d 1328 (Ind. Ct. App. 1991) (tip from confidential informant that defendant would be driving in the area and “possibly” in possession of narcotics did not establish probable cause for warrantless search of defendant’s vehicle where the trustworthiness of the information had not been established).  

At the same time, anonymous tips can provide important information enabling police to apprehend suspects who otherwise might escape detection.  A balance must be struck between these considerations.  As 
Gates
 put it: “While a conscientious assessment of the basis for crediting [anonymous] tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.”  
Gates
, 462 U.S. at 238.  The only factor cutting towards crediting the tip in this case was that the caller claimed to have personally witnessed the criminal activity.  
Gates
 indicated that “a statement that the event was observed firsthand” entitles the tip to “greater weight than might otherwise be the case.”  
Id.
 at 234.  However, the caller gave no information that would have enabled a neutral and detached magistrate to assess the credibility of this claim of firsthand observation.  The caller’s assertion of personal knowledge carries little weight in light of the total lack of corroboration of the claim and no basis for concluding that the caller was a credible source.  In short, the search warrant here was issued on uncorroborated hearsay from an informant whose credibility was entirely unknown.  This does not satisfy the Fourth Amendment’s requirement of probable cause.  

The reason for the prohibition on searches based on uncorroborated hearsay goes to the root of the Fourth Amendment and Indiana statutory and constitutional protection against unreasonable searches and warrants without probable cause.  If any anonymous caller’s allegation, uncorroborated by anything beyond public knowledge, could justify a search, every citizen’s home would be fair game for a variety of innocent and not so innocent intrusions.

B.  
Indiana Code § 35-33-5-2

Jaggers contends the caller’s information also does not satisfy the Indiana statute regulating the issuance of search warrants based on hearsay.  That statute provides:

(b)  When based on hearsay, the [probable cause] affidavit must either:

(1)  contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.        

Ind. Code
 § 35-33-5-2(b) (1993).  Amendments to the statute have in effect codified changes in Fourth Amendment doctrine on the use of informants to establish probable cause.
(footnote: 2)  Accordingly, we have held that “[w]hen seeking either a search or an arrest warrant, the police must follow the warrant statute, which specifies the minimum information necessary to establish probable cause.”  
Esquerdo v. State
, 640 N.E.2d 1023, 1029 (Ind. 1994) (citation and footnote omitted); 
accord
 
Houser
, 678 N.E.2d at 99.
(footnote: 3) 

For many of the same reasons discussed in Part IA 
supra
, the requirements of the statute were not satisfied here.  Subsection (b)(1) was not met because the officer did not offer any information to the issuing magistrate, and apparently had none, establishing the credibility of the anonymous source.  Subsection (b)(2) was also not met because the totality of the circumstances did not corroborate the hearsay.  The informant’s claim that Jaggers was cultivating and trafficking marijuana in his house was entirely uncorroborated.  The facts that were verified were unremarkable; anyone who knew the location of Jaggers’s house and the two marijuana patches could have placed the anonymous phone call.  
Bradley v. State
, 609 N.E.2d 420, 423 (Ind. 1993) (totality of circumstances did not corroborate hearsay where police investigation established only that anonymous caller gave correct address of the defendant and an accurate description of a crime that had in fact occurred).  The Supreme Court observed in 
Gates
 that “[b]ecause an informant is right about some things, he is more probably right about other facts.”  
Gates
, 462 U.S. at 244 (internal quotation marks and citation omitted).  While this may be true as a general proposition, this presumption does not attach until the informant is shown to be correct about facts not within the public domain.  
Seltzer v. State
, 489 N.E.2d 939 (Ind. 1986) (anonymous tip supported finding of probable cause because informant described a class ring missing from the crime scene and the theft had not been reported in the newspapers).  The caller’s claim of firsthand observation of marijuana in Jaggers’s house would ordinarily boost the credibility of the assertion, 
Dolliver v. State
, 598 N.E.2d 525, 528 (Ind. 1992), but it too is uncorroborated.  The statement of firsthand knowledge could just as easily have been fabricated to make the underlying allegation appear more credible.  
Cf.
 
Everroad v. State
, 590 N.E.2d 567 (Ind. 1992) (subsection (b)(2) not satisfied where claim of firsthand observation of criminal activity was not corroborated by totality of circumstances).  In sum, the hearsay in this case fails to satisfy either the Fourth Amendment or Indiana Code § 35-33-5-2.   

II.  Good Faith Exception to the Exclusionary Rule

The Supreme Court of the United States held in 
United States v. Leon
, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith.  However, 
Leon
 cautioned that certain police conduct would not qualify for this exception, including where (1) the magistrate is “misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth”; or (2) the warrant was based on an affidavit “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.”  
Id.
 at 923 (internal quotation marks and citations omitted).  In affirming the trial court, the Court of Appeals could not agree on proper application of the good faith exception.  Judge Robertson held that 
Leon
 allowed the evidence to be admitted, irrespective of whether probable cause existed, because the magistrate had not been misled.
(footnote: 4)  Judge Chezem concurred in result without opinion.  Judge Najam dissented on two grounds: (1) the warrant was not supported by probable cause because it issued on uncorroborated hearsay; and (2) the good faith exception did not apply because no well-trained officer would reasonably have relied on a warrant issued on uncorroborated hearsay. 

Jaggers argues that the investigating officer misled the magistrate when he testified at the probable cause hearing that the two marijuana plots were “near” State Road 60 (Jaggers’s house was located just north of State Road 60 on Lawrence County Road).  The State responds that the 
Leon
 exception applies here because the officer did not testify falsely about the location of the plots.  We disagree.  The marijuana patches were at least two and six miles from the house respectively.  The officer personally visited the plots just a few hours before testifying as to their location.  Although he agreed with the prosecutor’s statement at the probable cause hearing that the plots were “separate from the place we are seeking to search,” the officer subsequently stated that the marijuana patches were “near” Jaggers’s residence.  Although perhaps an innocent mischaracterization, this representation was critical when viewed in the factual context.  Placing the plots “near” Jaggers’s residence implied a link between Jaggers and the plots that was not supported by the evidence.  This, in turn, implied involvement by Jaggers in marijuana trafficking that was otherwise not reasonably inferable from the officer’s testimony.  In applying 
Leon
, our cases have stressed the importance of accurately presenting all relevant information to the magistrate.  
See
, 
e.g.
, 
Dolliver
, 598 N.E.2d at 529.  Only then can the magistrate make the neutral and detached determination the Fourth Amendment requires of whether probable cause exists.  Here the magistrate’s decision to issue the warrant may well have turned on the blurring of the absence of any link between Jaggers and the marijuana patches.  

This certainly approaches misleading the magistrate to a degree that prevents invocation of 
Leon
.  In any event, we agree with Judge Najam that the information on which the warrant was based was so lacking in indicia of probable cause that no well-trained officer would reasonably have relied on the warrant.  Law enforcement officers are trained to distinguish the incriminating from the innocuous.  Federal constitutional cases such as 
Gates
 and Indiana’s warrant statute make at least two things abundantly clear to law enforcement officers who seek a warrant based on hearsay: (1) the informant must be shown to be credible; or (2) the information must be shown to be reliable through corroboration or some other means.  Because the informant in this case was anonymous, it would have been clear at the outset to a reasonable police officer that some corroboration of the caller’s allegations would be critical if a warrant was to be obtained.  Indeed, our decisions have emphasized that corroboration of inculpating information can sometimes be crucial to determining the existence of good faith.  
Cf.
 
Bradley
, 609 N.E.2d at 423-24 (holding that good faith exception was not available in part because there was no corroboration of anonymous caller’s allegation linking defendant to the crime).   

The State’s contention that the officer corroborated the anonymous tip “to the extent practicable” does not comport with the facts.  The caller stated that Jaggers had “an ongoing operation for several years at that location” and that “something is pretty much always growing in there.”  This should have signaled time and opportunity to develop independent data showing the allegations to be reliable.  Yet the police investigation was limited to confirming factual allegations that shed absolutely no light on whether Jaggers’s house might contain evidence of crime.  The location of the house and of the off-site plots were “easily obtained facts and conditions existing at the time of the tip . . . .”  
Gates
, 462 U.S. at 245. The caller claimed that he had seen marijuana “in and around that residence and its curtilage,” but the officer did not attempt to confirm this through personal observation.  And even though the caller asserted that Jaggers was selling “a pound of marijuana a week,” no surveillance of any kind was placed on the house to determine whether the level of traffic was consistent with drug dealing.  Finally, the officer expended no effort to establish any link between Jaggers and the marijuana patches.  In short, there was no corroboration of these critical facts and no serious effort to corroborate them.     

Since 1969, the General Assembly has required some showing of credibility of the informant or of the hearsay for a warrant to issue on the informant’s statements.  
See
, 
e.g.
, 1969 Ind. Acts, ch. 99, § 1.  Although the warrant statute has been amended from time to time, this legislative policy has remained consistent for nearly thirty years.  
See
 
also
 note 2 
supra
.  Police officers are reasonably charged with knowing the statute’s basic requirements: “The goal is that warrants be issued only upon probable cause, shown preferably by facts but in any event by information that is believed to be reliable.”  
Madden v. State
, 263 Ind. 223, 226, 328 N.E.2d 727, 729 (1975) (construing predecessor statute).  Because reliance on a warrant issued on completely uncorroborated hearsay from an anonymous informant contravenes this purpose, the conduct of the police here cannot be characterized as objectively reasonable.  
Leon
’s rationale is not advanced by effectively allowing the State to claim good faith reliance on a warrant after a less than faithful effort to establish probable cause to obtain it.  Accordingly, we hold that the good faith exception announced in 
Leon
 cannot save the illegally-seized evidence in this case.  The trial court erred when it denied Jaggers’s motion to suppress and admitted the evidence seized as a result of the search.  Because the error was not harmless, the conviction must be reversed.
(footnote: 5)       

Conclusion

   Transfer is granted.  Larry E. Jaggers’s conviction for possession of marijuana is reversed.  This cause is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

FOOTNOTES
1:  
Ind. Code
 § 35-48-4-11 (1993).

2:  
The current subsection (b)(1) was enacted in substantively the same form in an amendment to the predecessor statute in 1977.  
See
 1977 Ind. Acts, P.L. 333, § 1.  As the Supreme Court explained in 
Gates
, many lower courts understood 
Spinelli v. United States
, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) to set forth a two-pronged test for probable cause determinations that required a showing of (1) the basis of the informant’s knowledge; and (2) facts sufficiently establishing the informant’s veracity or the reliability of the information.  
Gates
, 462 U.S. at 228-29.  The 1977 amendment codified some of these criteria.  Subsection (b)(1) remains on the books notwithstanding the demise of the 
Spinelli
 test in 
Gates
.  What is now subsection (b)(2) was added to the warrant statute in 1984.  
See
 1984 Ind. Acts, P.L. 177, § 1.  By focusing on the totality of the circumstances, it clearly tracks the then-recent decision in 
Gates
.

3:  
The warrant in this case was issued pursuant to a hearing before the issuing magistrate rather than a probable cause affidavit.  The requirements for affidavits based on hearsay also apply in this setting.  
Ind. Code
 § 35-33-5-8(a) (1993).  

4:  
In reaching this conclusion, Judge Robertson noted that the officer gave deposition testimony specifying the distances of at least two and six miles between Jaggers’s house and the off-site plots.  The officer’s deposition was taken after the warrant was issued.  Accordingly, this testimony is relevant to the 
Leon
 analysis only to the extent that it sheds light on whether the officer may have possessed information not transmitted to the magistrate.  The deposition plays no part in determining what information was presented to the magistrate to obtain the warrant.  
Leon
, 468 U.S. at 923 (proper inquiry is whether magistrate “in issuing a warrant” was misled by false information).  

5:  
The parties make no contention based on the Indiana version of the good faith exception codified at Indiana Code § 35-37-4-5 (1993).