**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



Sep 14 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD E. BAIER**
Baier & Baier
Mount Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MYRON MARKAS COOK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 65A05-1201-CR-15 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause No. 65C01-1103-FB-103

**September 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After a jury trial, Myron Cook was found guilty of dealing in methamphetamine, a Class B felony; possession of chemical reagents or precursors with intent to manufacture a controlled substance, a Class D felony; and maintaining a common nuisance, a Class D felony. Cook raises two issues for our review, which we restate as: 1) whether the search of Cook's residence violated the Fourth Amendment; and 2) whether sufficient evidence supports his conviction for dealing in methamphetamine. Concluding the search of Cook's home did not violate the Fourth Amendment and sufficient evidence supports his conviction for dealing in methamphetamine, we affirm.

## Facts and Procedural History

While working the midnight shift in March 2011, Mount Vernon Police Officer Allen Middleton was driving through a residential area when he smelled a strong odor of ether, a chemical frequently used in the production of methamphetamine. He drove back through the area, this time with his windows rolled down, and again noticed the odor. After contacting Officer Darrin Lemberg, the two men walked around the area in an attempt to determine from where the odor emanated. They determined the smell was strongest when standing in front of a home on West Third Street. Officer Lemberg noticed an open window on the side of the house, approached the window, and determined the smell was even stronger by the open window.

Officer Lemberg left to obtain a search warrant, while Officer Middleton waited on West Third Street and watched the house. Soon thereafter, Officer Middleton noticed a male exit the front of the house, walk off the porch, and shine a flashlight towards where Officer Middleton and his car were located. The man then went back onto the

porch. Officer Middleton called Officer Lemberg and told him "they know we're here." Transcript at 9. Officer Lemberg returned, and the officers decided to enter the house. The officers approached the front door of the house while deputies of the Posey County Sheriff's Department covered the back door. While approaching the front door, the officers also detected the odor of anhydrous ammonia, another chemical used in methamphetamine production. When Officers Lemberg and Middleton knocked on the front door, they could hear people talking inside, but no one answered. After Officer Lemberg informed the inhabitants they would force entry, a woman opened the door.

At the same time that the front door was opened, the deputies covering the back door forced entry into the home. Cook was one of the home's inhabitants, along with two women, a six-year-old child, and a seven-month-old child. They asked one of the women for consent to search the house, but she refused. Officers ordered the inhabitants out of the home and, when an officer arrived with a search warrant one to two hours later, they searched the home. The following items were found in the home: a bottle containing sulfuric acid, batteries that had lithium stripped from them and were soaking in a solvent, a bottle with salt in the bottom and a hole drilled in the top with a tube coming out of it, an empty bottle of Heet, coffee filters, salt, sandwich baggies, a baggie containing a white powder residue, an air tank with an altered valve, digital scales, a bottle of Liquid Fire, starting fluid cans, empty blister packs, and empty boxes of various brands of pseudoephedrine. The white powder residue was later determined to contain ephedrine or pseudoephedrine and methamphetamine in an amount less than .005 grams.

A jury found Cook guilty of dealing in methamphetamine, a Class B felony; possession of chemical reagents or precursors with intent to manufacture a controlled

substance, a Class D felony; and maintaining a common nuisance, a Class D felony. The trial court sentenced Cook to ten years for dealing in methamphetamine and one and a half years for each Class D felony, all to be served concurrently. Cook now appeals. Additional facts will be supplied as appropriate.

## Discussion and Decision

### I. Search and Seizure

#### A. Standard of Review

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006). Searches performed by government officials are per se unreasonable under the Fourth Amendment if conducted without a valid warrant, subject to a few well-delineated exceptions. Id. We review the trial court's denial of a defendant's motion to suppress evidence using a standard similar to that employed in sufficiency of the evidence challenges. Id. We will consider the evidence favorable to the trial court's ruling, along with substantial uncontradicted evidence to the contrary, and we will determine whether the evidence is sufficient to support the trial court's ruling. Id.

#### B. Cook's Fourth Amendment Challenge[1]

The State argues Cook has waived his right to challenge the officers' search of his residence as unreasonable because Cook did not object contemporaneously at trial when

---

[1] Cook briefly raises Article 1, Section 11 of the Indiana Constitution in his statement that citizens are protected from unreasonable searches and seizures. This is his only reference to this constitutional provision. Cook does not articulate a separate and independent basis that the search of his home was improper based upon the Indiana Constitution, and therefore any state constitutional claim is waived. Wilkins v. State, 946 N.E.2d 1144, 1147 (Ind. 2011).

4

evidence arising from that search was admitted. As a threshold issue, we address this first.

Prior to trial, Cook moved to suppress evidence and argued the search of his residence was unconstitutional. Following a suppression hearing, the trial court denied his motion. At trial, several people testified: Officers Middleton and Lemberg, Jailer James Key, Deputy Jeremy Fortune, Kenneth Rose, Marcus Montooth, and Rebecca Nickless. In addition to the testimony of each individual, the State presented various exhibits, including all of the items found in Cook's home, during the testimonies of Key, Fortune, Rose, Montooth, and Nickless. No exhibits were offered during the testimonies of Officers Middleton or Lemberg.

As Cook notes in his reply brief, during Officer Middleton's testimony, Cook objected based upon the Fourth Amendment "to any testimony presented beyond this point" when Officer Middleton began discussing the events and contents inside the home. Tr. at 10. Again, during Officer Lemberg's testimony, Cook objected "to any testimony beyond this point" when Officer Lemberg began testifying as to what occurred and what was found inside the home. Id. at 30. Both objections were overruled. Cook does not cite to any other objections made during trial based upon the Fourth Amendment. On review, we will not search the record to find a basis for a party's argument. Nealy v. American Family Mut. Ins. Co., 910 N.E.2d 842, 845 n.2 (Ind. Ct. App. 2009), trans. denied; see also Ind. Appellate Rule 46(A)(8)(a).

As our supreme court has stated:

A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress. The purpose of this rule is to allow the

> trial judge to consider the issue in light of any fresh developments and also to correct any errors.

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted). We therefore agree with Cook that he did not waive the right to argue the testimonies of Officers Middleton and Lemberg violated the Fourth Amendment, but we agree with the State that Cook has waived such an argument for the various exhibits the State introduced into evidence while other witnesses testified.

We now turn to the merits of Cook's Fourth Amendment argument. Cook contends the police officers' initial warrantless entry into his home violated the Fourth Amendment. Assuming for the sake of argument that the officers' entry into the home was not invited, we examine whether any exceptions to the warrant requirement exist. The State argues the exigent circumstances exception applies because officers detected strong odors of ether and anhydrous ammonia coming from the home and, after they knew people were inside the home, the officers were concerned for the inhabitants' safety. We agree. In Holder, our supreme court addressed whether a strong ether odor coming from a home coupled with police officers' knowledge that the home was currently inhabited created exigent circumstances due to the risk of immediate danger to the home's inhabitants. 847 N.E.2d at 939-40. The court concluded, "[w]e hold that an objectively reasonable belief in the immediate need to protect the public from death or serious injury supported the officers' conclusion that exigent circumstances justified the immediate warrantless entry into the defendant's house, notwithstanding the unreasonable search and seizure provisions of the Fourth Amendment." Id. at 940. Cook is correct that in Holder police officers knew a child was in the home before entering,

6

unlike here, and that the court noted this fact in its opinion as a factor giving officers a reasonable belief that immediate entry was needed to protect the public from death or serious injury, including the child. However, the court's concluding paragraphs and holding do not limit the application of the exigent circumstances exception to situations where a child is present in the home. While a child's presence may give officers extra concern, knowledge of any persons located inside the home is sufficient to create exigent circumstances such that the exception to the warrant requirement applies.

Even if no exception applied to the Fourth Amendment's requirement that police have a warrant to enter a home, the violation would be harmless error. "Harmless error occurs when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no likelihood that the erroneously admitted evidence contributed to the conviction." Smock v. State, 766 N.E.2d 401, 407 (Ind. Ct. App. 2002). The testimonies of Officers Middleton and Lemberg do not include incriminating evidence, other than the fact that once inside the home they could still smell ether and anhydrous ammonia. The officers had already testified that they were able to determine the chemical odors were coming from Cook's home before they entered. Thus, their statements that they again smelled the chemicals once inside offered no new evidence. The rest of the evidence found in the home was retrieved after a search warrant was obtained.[2] We are therefore satisfied there is no likelihood that the

---

[2] Cook argues that if the officers' entry violates the Fourth Amendment, the search warrant was invalid because the affidavit for the search warrant contained information obtained during the initial entry into the home. Leaving aside our conclusion that Cook has waived any argument that the various pieces of evidence found inside the home were admitted into evidence in violation of the Fourth Amendment, we disagree with Cook's synopsis of the search warrant affidavit. Although not entirely clear, the affidavit does elude to the affiant smelling ether and anhydrous ammonia inside the home after police entered, but it also stated that the officers detected the odor and traced it to Cook's residence before entering, that Officer Lemberg knew Cook had previous involvement with methamphetamine production, that the officers themselves had previous experience with methamphetamine

7

testimonies of Officers Middleton and Lemberg, even if erroneously admitted, contributed to the conviction.

## II. Sufficiency of the Evidence

### A. Standard of Review

When reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010). We look only to the evidence that supports the verdict and any reasonable inferences drawn therefrom, and we will affirm a conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

### B. Dealing in Methamphetamine

"A person who: (1) knowingly or intentionally: (A) manufactures; . . . methamphetamine, pure or unadulterated; . . . commits dealing in methamphetamine, a Class B felony[.]" Ind. Code § 35-48-4-1.1(a). "Manufacture" is defined as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination" of extraction and chemical synthesis. Ind. Code § 35-48-1-18.

Cook argues the evidence is insufficient to support his conviction of dealing in methamphetamine because the evidence does not support a finding that he manufactured

production and the smells of ether and anhydrous ammonia, and that Officer Middleton observed a man exit and subsequently re-enter the home while he was waiting for a search warrant. Even without the vague statement that could suggest the affiant smelled ether and anhydrous ammonia after entering the home, a sufficient basis for the issuance of the search warrant existed. See Jaggers v. State, 687 N.E.2d 180, 181 (Ind. 1997) ("In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (quotation omitted).

methamphetamine. Deputy Fortune testified about the scene officers found inside Cook's home. He stated lithium had been stripped out of batteries and they were soaking in solvent in order to be added to the manufacturing reaction and that a water bottle had salt in the bottom, a hole drilled in the top, and a tube coming out. Deputy Fortune testified the water bottle apparatus was a hydrogen chloride gas generator, and "[a]ll you needed was the liquid fire to go with it, to add to it, to make the gas." Tr. at 110. This is analogous to Dawson v. State, 786 N.E.2d 742 (Ind. Ct. App. 2003), trans. denied, where this court determined the defendant had "manufactured" methamphetamine by crushing over-the-counter pills into a powder form in order to extract ephedrine, a precursor in the production of methamphetamine, because this was an extraction process. Id. at 748. Similarly, officers discovered lithium, a precursor in the production of methamphetamine, extracted from batteries inside Cook's home. A reasonable jury could have concluded Cook had "manufactured" methamphetamine based upon this evidence.

## Conclusion

Police officers' initial entry into Cook's home did not violate the Fourth Amendment because exigent circumstances existed, and the evidence is sufficient to support Cook's conviction of dealing in methamphetamine. We therefore affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.