RILEY, Judge,
dissenting.
While I agree with the majority that Brian does not have standing to challenge the validity of the initial warrant, executed in the apartment of Carroll and Hite, I respectfully dissent from the majority’s decision to affirm Brian’s conviction. Based on the totality of the circumstances, I do not find that there was sufficient probable cause to justify the issuance of the second search warrant.
In this case, the probable cause supporting the warrant to search Brian’s apartment was derived solely from the hearsay statements of three individuals — Krekler, Hite, and Carroll. In order to form the basis for probable cause, hearsay must be reliable. Methene v. State, 720 N.E.2d 384, 388 (Ind.Ct.App.1999). It is well-established that “uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant.” Joggers v. State, 687 N.E.2d 180, 182 (Ind.1997) (citing Illinois v. Gates, 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Accordingly, the probable cause affidavit must contain sufficient information to establish that each of the hearsay declarants is credible and that there is a factual basis supporting the information provided, or to establish that the hearsay is corroborated by the totality of the circumstances. Ind.Code § 35-33-5-2(b). The reliability of hearsay may be demonstrated in several ways: “(1) the *843 informant has given correct information in the past; (2) independent police investigation corroborates the informant’s statements; (3) some basis for the informant’s knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted.” Jaggers, 687 N.E.2d at 182.
As the majority notes, it is our task on review to assess whether the issuing judge had a substantial basis for finding probable cause. In this case, the facts stated in Detective Hildebrand’s probable cause affidavit, along with “the rational and reasonable inferences drawn therefrom[,]” do not establish that the hearsay is reliable. Utley v. State, 589 N.E.2d 232, 236 (Ind.1992). The affidavit neither informs the issuing judge that any of the three individuals previously acted as a reliable informant, nor states that the informants correctly predicted Brian’s future actions. See Jaggers, 687 N.E.2d at 182. Furthermore, the affidavit is devoid of details regarding whether the police investigated the informants’ statements to independently substantiate the information. In fact, the police officers conceded that they made no effort to verify the informants’ credibility or otherwise link Brian to the crime of dealing marijuana. See Newby v. State, 701 N.E.2d 593, 602 (Ind.Ct.App.1998). During the trial, Detective Hildebrand testified that a police officer was sent to the third floor “to verify the locations of the [apartment] doors[,]” as described by Carroll and Hite. (Transcript p. 172). This information was omitted from the affidavit, and our court has previously established that simply knowing an address “is not indicative of having any ‘inside’ information” to connect that person with the alleged crime. See Snover v. State, 837 N.E.2d 1042, 1049 (Ind.Ct.App.2005).
Regarding the basis for Krekler’s knowledge, the affidavit relies on “hearsay within hearsay” — that is, Krekler informed Trooper Cook, who then told Detective Hildebrand that Krekler had purchased marijuana from a man named Shrek, and she had heard from someone else that his name was Brian. See Newby, 701 N.E.2d at 598. The affidavit does not mention when or where Krekler purchased the marijuana, nor does it describe her familiarity or previous encounters with “Shrek” or any other details to link Brian to the drug sale. See Hensley v. State, 778 N.E.2d 484, 488 (Ind.Ct.App.2002) (finding no probable cause because the affidavit “did not link [informant’s] alleged purchase of methamphetamine with the premises described in the affidavit”). At the time they executed the warrant, the police may have been unaware that Krekler was lying when she stated that she had purchased marijuana from Shrek on five or six occasions from his second-floor apartment in Batesville — details which were absent from the probable cause affidavit. Nonetheless, the police officers certainly had reason to doubt the trustworthiness of her statements. Krekler’s inability to identify Brian’s presence in or absence from a set of mug shots — despite having interacted with him on multiple occasions — should have prompted the police officers to, at a minimum, conduct some independent research prior to applying for a warrant. Furthermore, the officers indisputably knew that Krekler was an unreliable informant after they unlawfully barged into the wrong apartment based on her statements; nevertheless, Detective Hildebrand stubbornly relied upon her implication of “Shrek” in the subsequent affidavit.
As to Carroll’s and Hite’s bases for knowledge, the affidavit claims that Carroll purchased the marijuana directly from Brian, and Hite explained that they had purchased marijuana from him on a monthly basis. Generally, firsthand observations of the crime “entitles the tip to *844 ‘greater weight than might otherwise be the case.’ ” Jaggers, 687 N.E.2d at 183 (quoting Gates, 462 U.S. at 234, 103 S.Ct. 2317). Here, though, the affidavit includes no evidence for the issuing judge to assume that Carroll and Hite, who are in a relationship and who had just been caught with illicit drugs in then* possession, are credible. See Bryant v. State, 655 N.E.2d 103, 108 (Ind.Ct.App.1995).
In contrast to the affidavit, Carroll testified that Hite actually purchased the marijuana, that he had never purchased any drugs from Brian, that he had no “reason to believe that [Hite] got marijuana f[ro]m Shrek,” and that he had falsely admitted to purchasing the marijuana in order to protect Hite. (Tr. p. 272). Furthermore, Carroll explained that, after questioning Hite,
[Detective Hildebrand] brought me on the front porch of my apartment building, in front of my neighbors, and told me that my girlfriend [said] that we have purchased the marijuana from Brian or Shrek, they didn’t know his name, that we had purchased it from him and she told him all about it and so he wanted to know how much we had paid for it and how many times we bought it from Shrek.
(Tr. p. 268). Detective Hildebrand informed Carroll that Hite reported that they paid “between forty and sixty dollars” to Shrek, so Carroll said, “[T]hat sounds good to me.” (Tr. p. 276).
The majority finds probable cause exists because of the way the pieces of information all fit together. However, the informants’ claims that they purchased marijuana from a man named Brian, whose nickname is Shrek, are the only details corroborated by all three individuals. Without some other indicia of the informants’ credibility or other reliable corroboration, the unique nickname does not, in itself, give rise to probable cause. See Cheever-Ortiz v. State, 825 N.E.2d 867, 872-73 (Ind.Ct.App.2005) (finding sufficient probable cause following a tip that “Cookie” had received a large marijuana shipment because, although the police knew “that Cheever-Ortiz used the ‘street name of Cookie,’ ” the informant also provided correct information about a previous investigation concerning “Cookie,” and the officers investigated other sources and conducted surveillance prior to obtaining the warrant).
Not only did the police officers decline to investigate the matter, the affidavit fails to explain that the police learned information about Brian while executing an invalid warrant in Carroll and Hite’s apartment based on Krekler’s faulty statements. See Ware v. State, 859 N.E.2d 708, 718 (Ind.Ct.App.2007) (“[A] probable cause affidavit must include all material facts, which are those facts that ‘cast doubt on the existence of probable cause.’ ”) (quoting Query v. State, 745 N.E.2d 769, 772 (Ind.2001)). Brian does not have the standing to argue that the police unlawfully obtained the evidence from Carroll and Hite, but it is an underlying fact contributing to the totality of the circumstances that the officers applied for a warrant based entirely on unreliable hearsay, busted into in the wrong apartment, and proceeded to apply for a second warrant without pausing to consider their sources.
In cases like this — where the officers ultimately found marijuana, but only did so by disregarding the mandates of probable cause — our justice system pays the price. The “privacy of all Hoosiers” is put in jeopardy when constitutional protections are circumvented in order to secure evidence. Brown v. State, 653 N.E.2d 77, 80 (Ind.1995). I find the totality of the information contained in the probable cause *845 affidavit to be insufficient for the issuing judge to determine that evidence of dealing marijuana would be found in Brian Bradley’s apartment. Based on the foregoing, I would conclude that the evidence admitted at Brian’s trial was unlawfully seized from his apartment pursuant to a search warrant unsupported by probable cause; thus, I would reverse.[8]

. I would also conclude that the search of Brian's apartment violated his rights under the Indiana Constitution. Based on their lack of diligence, I find that the totality of the circumstances does not demonstrate that the police acted reasonably in obtaining the search warrant. See Brown, 653 N.E.2d at 80. In addition, based on the evidence, I find that the police officers failed to comply with their “duty and obligation of full and fair disclosure of all material facts when applying for a warrant” and would conclude that the good faith exception does not apply. Hayworth v. State, 904 N.E.2d 684, 698 (Ind.Ct.App.2009).