## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2017, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerry Turner,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 16, 2017<br><br>Court of Appeals Case No.<br>49A05-1702-CR-241<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1507-F2-26390 |

**Bailey, Judge.**

# Case Summary

[1] Jerry Turner ("Turner") was convicted of one count of Possession of a Narcotic Drug, as a Level 4 felony,[1] and was sentenced to eight years imprisonment. He now appeals his conviction.

[2] We affirm and remand with instructions.

# Issue

[3] Turner raises a single issue for our review, which we restate as whether the trial court abused its discretion when it admitted evidence obtained during a search, because the search warrant was not supported by probable cause.[2] We also address *sua sponte* a conflict between the trial court's judgment and sentence as announced from the bench and the written records in this case.

# Facts and Procedural History

[4] Brandon Beeler ("Beeler"), a New Palestine resident, died of a heroin overdose on July 20, 2015. Investigation of Beeler's death led police to talk to Beeler's mother, Kristen Calhoun ("Calhoun"). Calhoun told police about two individuals with whom Beeler was friends, Angela Davis ("Davis") and Isaac

---

[1] Ind. Code § 35-48-4-6(a).

[2] The State argues that even if the warrant was not valid, the good-faith exception applies. Because we resolve this case on the question presented above, we do not reach arguments concerning the applicability *vel non* of the good-faith exception.

Williams ("Williams"). Davis had been with Beeler the night prior to his death, and Williams was known to Calhoun as a heroin addict with whom Beeler had spent time in the weeks prior to his death.

[5] Police contacted and separately interviewed both Davis and Williams, and drove with Davis to an area of Indianapolis to which Davis and Beeler had traveled on the night prior to Beeler's death. Based upon their questioning of Williams, police identified both an apartment building and a specific apartment in which Williams had seen Beeler purchase heroin. Davis subsequently corroborated for police the building in which the apartment was located.

[6] Based upon this information, on July 23, 2015, police applied for and received a search warrant for the apartment Williams identified to police. Police subsequently searched the apartment, which was occupied by Turner and another individual, Tiara White ("White"). The search yielded 20 grams of heroin, more than $1,000 in cash, and other items related to drug use, as well as information connecting Turner and White to the apartment. Based upon the results of the search, Turner and White were arrested.

[7] On July 28, 2015, the State charged Turner with Dealing in a Narcotic Drug, as a Level 2 felony;[3] Possession of a Narcotic Drug, as a Level 3 felony; and Maintaining a Common Nuisance, as a Level 6 felony.[4]

[8] On September 17, 2015, Turner filed a motion to suppress the evidence yielded from the search of the apartment, challenging as invalid on its face the affidavit submitted in support of the police request for the search warrant. On December 3, 2015, the trial court denied the motion to suppress. Turner subsequently sought and was denied certification for an interlocutory appeal of the ruling on the motion to suppress.

[9] On March 14, 2016, Turner moved the trial court to reconsider the motion to suppress evidence. On April 16, 2016, the trial court denied the motion; Turner again sought and was denied certification for interlocutory appeal.

[10] On August 22, 2016, a bench trial was conducted, and Turner and White were tried jointly. Counsel for both defendants objected to the admission of the evidence obtained from the search, and once more Turner renewed his motion to suppress. During the trial, Turner moved for judgment on the evidence as to the charges of Dealing in a Narcotic Drug and Maintaining a Common Nuisance. After the close of evidence, the State requested that the trial court consider a lesser-included offense to the Possession of Narcotics charge against

---

[3] I.C. § 35-48-4-1(a)(2).

[4] I.C. § 35-48-4-13(b)(1).

Turner, so that the trial court would determine whether to convict Turner of Possession of Narcotics as a Level 4 felony, rather than as a Level 3 felony. At the trial's conclusion, the court took the matters before it under advisement.

[11] On August 22, 2016, the trial court granted Turner's motion for judgment on the evidence as to Maintaining a Common Nuisance, finding him not guilty.

[12] On October 12, 2016, the trial court denied the motion to suppress. On the same day, the court found Turner guilty of Possession of a Narcotic Drug, as a Level 4 felony, and found him not guilty of Dealing in a Narcotic Drug.

[13] A sentencing hearing was conducted on January 12, 2017. At the conclusion of the hearing, the trial court sentenced Turner to eight years imprisonment, with four years of that time executed in the Department of Correction, two years executed in community corrections, and two years suspended to probation.

[14] This appeal ensued.

# Discussion and Decision

## Probable Cause to Support a Search Warrant

[15] Turner challenges the trial court's admission into evidence, over his objection, of items obtained from execution of the search warrant. The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution both afford protection from warrants issued without

probable cause. That right is further codified in the Indiana Code, which provides:

> (a) Except as provided in section 8 of this chapter, and subject to the requirements of section 11 of this chapter, if applicable, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
>> (1) particularly describing:
>>
>>> (A) the house or place to be searched and the things to be searched for; or
>>>
>>> (B) particularly describing the person to be arrested;
>>
>> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
>>
>>> (A) the things sought are concealed there; or
>>>
>>> (B) the person to be arrested committed the offense; and
>>
>> (3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.
>
> (b) When based on hearsay, the affidavit must either:
>
>> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay

and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

I.C. § 35-33-5-2.

Trial courts are afforded broad discretion in ruling on the admissibility of evidence, and we reverse only upon a showing of an abuse of that discretion. *Bowles v. State*, 820 N.E.2d 739, 742 (Ind. Ct. App. 2005), *trans. denied*. The role of the trial court in determining whether to issue a search warrant "'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A reviewing court's task "is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *Gates*, 462 U.S. at 238-39). To determine whether such a substantial basis existed, the reviewing court focuses on whether reasonable inferences drawn from the totality of the evidence supported a determination of probable cause, and the reviewing court will afford the trial court significant deference in that review. *Id.* at 181-82. A reviewing court "includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision." *Id.* at 182. In conducting our review, "we consider only the evidence presented to the issuing magistrate and not [*post hoc*] justifications for the search." *Id.*

[17] Turner argues that the search warrant was invalid because the information used by the police in the warrant affidavit—the statements made to police by Davis and Williams—was not sufficiently reliable or corroborated to support a determination of probable cause, and that accordingly the search warrant was improperly issued. Turner draws our attention to several cases that address questions related to the use of hearsay and informants as sources of information for supporting search warrant applications, and argues that 1) neither Davis nor Williams were typical "concerned citizens," so that their statements required additional corroboration or indicia of reliability, which did not occur, and 2) the information provided by these individuals was stale and thus not sufficiently timely to support the issuance of the warrant.

[18] Our Indiana Supreme Court has previously addressed the question of the reliability of concerned citizens and informants in the context of determining the existence of probable cause or reasonable suspicion. In *Pawloski v. State*, the court distinguished generally between professional informants and anonymous tipsters, on the one hand, and cooperative citizens, on the other. 269 Ind. 350, 353-54, 380 N.E.2d 1230, 1232-33 (1978). Though it observed that there are general approaches to determining the reliability of a source of information in each category, the *Pawloski* Court nevertheless reiterated that reliability is to be determined "by reference to (1) an informer's past record of reliability or (2) by extrinsic facts proving an informer's information reliable." *Id.* at 353 (citing *Bowles v. State*, 256 Ind. 27, 267 N.E.2d 56 (1971)). And even with guidelines for each category, "the requirement for corroboration is not totally eliminated.

The amount of evidence necessary to satisfy the probable cause test is largely determined on a case-by-case basis." *Id.* at 255.

[19] The Indiana Supreme Court softened the apparently firm distinctions between concerned citizens, on the one hand, and professional informants and anonymous tipsters, on the other. *Kellems v. State*, 842 N.E.2d 352, 355-56 (Ind. 2006), *reversed on reh'g on other grounds*, 849 N.E.2d 1110. In *Kellems*, the court tempered the categories set forth in *Pawloski* to apply primarily to matters of reasonable suspicion, and not probable cause. *Id.* at 356 (citing *Pawloski*, 380 N.E.2d at 1232-33). Thus, information obtained from informants must still be reliable under the totality of the circumstances, and, as the U.S. Supreme Court observed in *Gates*, "[r]igid legal rules are ill-suited to an area of such diversity" as assessing the reliability of information provided in support of a search warrant application. *Gates*, 462 U.S. at 232; *Jaggers*, 687 N.E.2d at 182 (addressing the assessment of reliability of anonymous informants).

[20] Our review of the search warrant application here leads us to conclude that the information in the warrant and its sources were sufficiently reliable under the totality of the circumstances. On July 20, 2015, Police commenced their investigation of Beeler's death by talking with Calhoun, who informed police that her son, Beeler, had been in the company of Davis on the night before he died. Upon speaking with police, Davis provided a detailed account of the events of the night in question. This included information that Beeler had used her phone to call someone called "Juicy Jay" or "Juice," said he had to pay someone money, and had Davis drive him to an apartment complex on the

northeast side of Indianapolis and to several locations afterward, including a Wal-Mart in which Beeler stayed for about twenty-five minutes for what was supposed to be a brief errand. The night's events made Davis suspicious of Beeler's behavior. She eventually left Beeler at his mother's home at 11:30 that night; unable to sleep, she sent a text message to him at 2:00 a.m. the following day, and knew that it had been received because it was flagged as "read" on her phone. Davis was "eager" to cooperate in helping police to locate the apartment complex to which she had taken Beeler, but was unable to easily find the complex because Beeler had directed her there, and said she would do more research to see if she could locate the apartment complex.

[21] A day later, on July 22, 2015, police again spoke with Calhoun, who identified Williams as a friend of Beeler's who also had a heroin addiction. Police spoke with Williams that day, and he stated that he was familiar with someone called "Juice," provided a physical description for the person, and identified the apartment in which he had met "Juice" by providing a specific building address—3418 Alsuda Court in Indianapolis—and the location of the specific apartment. Williams provided police with a telephone number for "Juice," which was the same number that Davis had provided to police as the number Beeler dialed from her phone on July 19, 2015. After obtaining this information from Williams, police again contacted Davis. Davis agreed to travel by car with police to an intersection in Indianapolis, and was able to direct police from that intersection to the same apartment building that

Williams had identified by street number—3418 Alsuda Court—and physically identified the building by pointing to it.

[22] These are hardly the kinds of anonymous and unverifiable statements with which courts have been hesitant to conclude support determinations of reasonable suspicion or probable cause. Davis willingly and eagerly helped police, Williams's statements were made potentially against his own interests, and information gathered from one was confirmed by the other. Taken together, we cannot say, under the totality of the circumstances, that the statements provided to police by Davis and Williams were so lacking in reliability as to fail to support a finding of probable cause.

[23] Nor do we think that staleness disqualifies the information as unreliable. An application for a warrant must present timely information. *Frasier v. State*, 794 N.E.2d 449, 457 (Ind. Ct. App. 2003), *trans. denied*. There is no bright-line rule setting forth the amount of time in which police must seek a warrant in the time that may elapse between the occurrence of the facts upon which the request for the warrant is based and the date of the issuance of the warrant. *Id.* Rather, the facts and circumstances of each case will determine whether the information is tainted by staleness. *Id.*

[24] Here, a police investigation commenced on the day of Beeler's death—July 20, 2015—and the search warrant was issued within three days based upon corroborated information obtained on July 21 and 22, 2015. The warrant was served on July 23, 2015. While Turner suggests that Williams's statements

lacked any connection to specific periods of time in which he and Beeler had encountered "Juice," the totality of the evidence supports a conclusion that the information in the warrant was not stale in light of Davis's corroboration of Williams's statements concerning locations and phone numbers based upon Davis's description of the events of July 19, 2015. We accordingly leave the trial court's decisions as to the admissibility of evidence undisturbed.

## Conflicting Orders

[25] We *sua sponte* turn to a discrepancy between the proceedings at trial and the trial court's records. After the close of evidence, counsel for White asked that the trial court consider a lesser-included charge in her case. Partially in response to this, the State addressed the trial court:

> Judge, and with that, as to Count II as to Mr. Turner, he's charged with level 3 possession because of a prior. It's not his prior… So, I'm going to be asking for a level 4 possession, a lesser included of the 3.

(Tr. Vol. II at 94.) The trial court confirmed the State's request: "You're not moving to amend? You're just asking for a lesser included on Count II?," to which the State responded, "Yes." (Tr. Vol. II at 94.) Turner agreed to this course of action: "That's fine with us." (Tr. Vol. II at 94.)

[26] Accordingly, when reaching its guilty finding and orally entering judgment and a sentence against Turner, the trial court found Turner guilty of Possession of Narcotics as a Level 4 felony, and determined Turner's sentence on that basis. (Tr. Vol. II at 106, 162.) Our review of the docket and the sentencing order,

however, indicate that the trial court's written records reflect conviction and sentencing for a Level 3 felony. The sentencing order characterizes the guilty finding as corresponding to "35-48-4-6(a)/F3: Possession of a Narcotic Drug." (App'x Vol. II at 19.) The court's Chronological Case Summary reads similarly: "Sentenced: …. 2. 35-48-4-6(a)/F3)." (App'x Vol. II at 13.) The aggregate term of Turner's sentence, eight years, falls within the statutory sentencing range for both Level 4 and Level 3 felonies. *See* I.C. §§ 35-50-2-5 & 35-50-2-5.5 (providing a sentencing range of three to sixteen years for a Level 3 felony, and a sentencing range of two to twelve years for a Level 4 felony).

[27] Thus, the trial court's statements from the bench conflict with the docket and the court's written sentencing order. Nevertheless, it is clear that the trial court intended to enter judgment and sentence upon a Level 4 felony. We accordingly remand with instructions to the trial court to correct its written sentencing order and the docket in conformance with its entry of judgment and oral sentencing order.

# Conclusion

[28] The statements in the affidavit submitted in support of the search warrant were sufficiently reliable and timely to support the trial court's finding of probable cause, and its admission of the evidence obtained as a result of service of the warrant. Because the trial court's oral entry of judgment and sentence conflict with its written records, we remand with instructions to enter a new written sentencing order and to correct the docket.

Affirmed in part and remanded.

Vaidik, C.J., and Robb, J., concur.