**Donald W. SNOVER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–0506–CR–254.**

Court of Appeals of Indiana.

Nov. 30, 2005.

---

Michael S. Greene, Elkhart, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Donald W. Snover appeals his convictions of dealing in methamphetamine as a Class A felony[1] and possession of marijuana as a Class D felony.[2] He raises one issue, which is whether the evidence discovered during a search of his house should have been excluded at trial. We affirm.[3]

### FACTS AND PROCEDURAL HISTORY

On November 12, 2003, a routine traffic stop in Elkhart, Indiana, led to the arrest of the driver, Kelly Hammond, who had outstanding warrants for his arrest. Upon his arrest, Hammond admitted he had methamphetamine in the car, and a police search recovered four grams of methamphetamine. After *Miranda* warnings, Hammond gave a written and signed confession. Thereafter, without the police making any promises regarding his prosecution, Hammond told the police his source for the drugs was Donald Snover. Hammond reported Snover had additional drugs in his second floor bedroom at his house on Laurel Street in Elkhart.

That same day, police prepared a search warrant affidavit that provided:

**The undersigned Affiant swears upon his oath that he believes and has good cause to believe that:**

Certain evidence involved in the commission of the crime of possession of and/or use of and/or dealing in methamphetamine, cocaine, marijuana, or other controlled substances, or drug paraphernalia in violation of I.C. 35–48–4 et seq. is concealed in, on, or about a residence situate[d] at **821 Laurel St., City of Elkhart, Elkhart County, State of Indiana, said premises being more particularly described as follows:** 821 Laurel St. is believed to be the residence of Donald W. Snover and is a two-story single family dwelling. The house has gray vinyl siding with white trim around the windows and doors and is on the

---

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–11.

3. After briefing was completed, Snover filed a *pro se* "Motion for Copy of Sentencing Hearing Transcripts." We note Snover is represented by counsel on appeal. Generally, courts do not address petitions or motions filed *pro se* by persons represented by counsel, because a party speaks to the court through his counsel. *See Underwood v. State,* 722 N.E.2d 828, 832 (Ind.2000) ("[O]nce counsel was appointed, Defendant spoke to the court through counsel. The trial court was not required to respond to Defendant's request or objection."), *reh'g denied.* Accordingly, we decline to address his *pro se* motion. We suggest Snover direct such motion to the trial court.

southeast corner of Laurel and Plum. There are landscape timbers and bushes on the north side of the house, which surround a wooden porch. The numbers "821" are black and affixed vertically to the right of the front door. There is a black metal mailbox to the right side of the door and underneath the numbers. There is a wooden deck on the south side of the house. There is an attached garage on the east side of the house.

**This Affiant bases his belief and cause for belief on the fact that:**

1. The affiant is [a] police officer with the Elkhart Police Department and has been employed in that capacity for six (6) years. The affiant has participated in approximately twenty (20) drug investigations and arrests during his tenure. These investigations have led to the seizure of methamphetamine, crack cocaine and marijuana.

2. The affiant attended a gang conference and seminar in Chicago, Illinois. The gang school included training on numerous types of narcotics and hidden compartments. The affiant has also attended a seminar for drug investigations for the patrol officer.

3. On July 31, 2003, Investigator William Wargo from the Elkhart County Prosecutor's Office received drug intelligence in reference to 821 Laurel St. The intelligence was provided by a confidential source who had provided information in the past which was determined to be credible and reliable. The CS stated that Don Snover of 821 Laurel St. was dealing ounces of methamphetamine from his residence, indicating that this was an ongoing long-term operation.

4. On November 12, 2003, the affiant executed a traffic stop at the intersection of Nappanee St. and W. Beardsley in Elkhart County, Indiana. The affiant arrested the driver, Kelly Hammond, with a date of birth of July 8, 1960, on an outstanding Elkhart County warrant. During the search incident to lawful arrest, the affiant located a lunch box on the passenger's side floorboard. The lunch box contained a plastic bag containing approximately 4.0 grams of suspected methamphetamine. The methamphetamine later tested positive with the MDMA/methamphetamine test kit. Thereafter, after being advised of his statutory and constitutional rights, Kelly Hammond gave a statement against his own penal interests to Cpl. Ballard and Cpl. Buchmann. This statement was made after his arrest and without any promises or consideration being given to him by any law enforcement officer. In the statement, Kelly Hammond stated that the methamphetamine was his and it was one-eighth of an ounce. Kelly Hammond stated that he purchased the methamphetamine from Donald Snover for $125.00 just prior to the traffic stop. Kelly Hammond stated that he purchased the methamphetamine in an upstairs bedroom at Snover's residence at 821 Laurel Street. Kelly Hammond further stated that at the same time of the purchase, he observed Donald Snover in possession of an additional quantity of controlled substances which he estimated to be approximately three-quarters of a pound of methamphetamine and one pound of marijuana.

5. The affiant researched the Elkhart Police Department RMS and located Donald Snover. Donald Snover is described as a white male with a date of birth of December 13, 1959. Donald Snover is also described as being 5'6", 135 lbs., with brown hair and green eyes. Donald Snover listed 821 Laurel St., Elkhart, Indiana as his address. The affiant also ran an Interstate identification Index/Criminal History on Donald Snover. The Criminal History stat-

ed that Donald Snover was arrested for Felony Possession of Marijuana on October 4th, 1999.

6. All of the aforesaid facts are within the personal knowledge of the Affiant and/or have been corroborated by the information and investigation specified above for the offenses of dealing in and/or possession of and/or use of methamphetamine and other controlled substances and that evidence of same is concealed in or about the above described premises which is within the County of Elkhart, State of Indiana. Further, the affiant has probable cause to believe that the information provided by Kelly Hammond is truthful and accurate based upon (1) the corroboration from the prior CS whose information indicated the presence of long-term drug trafficking by Donald Snover at his residence on Laurel Street and (2) the fact that the information was provided by Hammond without any consideration, included statements made which were against his penal interests, and were provided by him with the knowledge that his identity would be disclosed.

7. Based upon the foregoing the affiant verily believes that a search of the residence identified in the paragraphs above will disclose the existence of: methamphetamine, cocaine, marijuana, narcotic drugs or other controlled substances, drug paraphernalia, drug ledgers or records of dealing in such controlled substances, money, scales used for weighing controlled substances, packaging materials for such substances, documents of residency, and/or other physical evidence indicative of possession of and/or use and/or dealing of cocaine, methamphetamine, marijuana, or controlled substances and paraphernalia.

(App. at 23–24.)

Based on that affidavit, a judge issued the search warrant. Police executed the warrant the night of November 12th and the early morning of November 13th. In Snover's bedroom, they found 280.70 grams of marijuana, 46.07 grams of methamphetamine, 464.42 grams of amphetamine, a triple-beam scale, an electronic scale, baggies, a tile with a line of drugs and a straw, $1,400 in cash, and a notebook resembling a drug ledger. Snover had $350 on his person.

On November 17, 2003, the State charged Snover with dealing in methamphetamine as a Class A felony and possession of marijuana as a Class D felony. Snover filed a motion to suppress the evidence discovered in his home, and the court denied that motion. A jury found Snover guilty of both counts. The court sentenced Snover to thirty-five years for dealing methamphetamine, to be served concurrent with a one-and-a-half year sentence for possession of marijuana.

## DISCUSSION AND DECISION

 Because the evidence was admitted at Snover's trial, he appeals the admission of the disputed evidence. *See Packer v. State*, 800 N.E.2d 574, 578 (Ind.Ct.App. 2003) (defendant's argument regarding denial of his motion to suppress more appropriately framed as error in admission of evidence at trial), *trans. denied* 812 N.E.2d 795 (Ind.2004). A trial court has broad discretion to determine what evidence to admit, and we review its decision for an abuse of discretion. *Id.* An abuse of discretion has occurred if the trial court's decision was against the logic and effect of the facts and circumstances before the court. *Id.*

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. The Fourteenth

Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997). When a defendant challenges whether evidence was gathered properly under the Constitution, the State bears the burden of proving the evidence was admissible. *See, e.g., Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001) (discussing admissibility under the Fourth Amendment of evidence gathered by warrantless search); *Carter v. State*, 730 N.E.2d 155, 157 (Ind.2000) (discussing admissibility of confession under the Fifth Amendment).

### 1. *Probable Cause*

 The Fourth Amendment demands no search warrant be issued unless it is supported by probable cause. U.S. Const. Amend. IV ("no warrant shall issue, but upon probable cause"). Probable cause is "a fluid concept incapable of precise definition ... [that] is to be decided based on the facts of each case." *Figert*, 686 N.E.2d at 830. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994).

 When deciding whether to issue a search warrant, the issuing judge's task is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Figert*, 686 N.E.2d at 830 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *reh'g denied* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983)).

 If a defendant questions the validity of the search warrant, the trial court's duty is to determine whether a "substantial basis" existed to support the issuing judge's finding of probable cause. *Id.* " 'Substantial basis requires the reviewing court, with significant deference to the [judge]'s determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination' of probable cause." *Id.* (quoting *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997)). When conducting its review, the trial court may consider "only the evidence presented to the issuing [judge] and not post hoc justifications for the search." *Id.* We review the issuance of a search warrant under the same standard the trial court employs. *Id.*

 Snover claims the affidavit did not contain probable cause for a search warrant because police failed to corroborate Hammond's hearsay or demonstrate his credibility. It is true that uncorroborated hearsay from an informant whose credibility is unknown cannot provide probable cause to issue a search warrant. *Iddings v. State*, 772 N.E.2d 1006, 1013 (Ind.Ct. App.2002), *trans. denied* 783 N.E.2d 700 (Ind.2002). This is a constitutional rule, but it has been codified by our legislature:

> (b) When based on hearsay, the affidavit must either:
>
> > (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
> >
> > (2) contain information that establishes the totality of the circumstances corroborates the hearsay.

Ind.Code § 35–33–5–2.

 The credibility of an informant for purposes of subsection (b)(1) can be

established by "[d]eclarations against penal interest." *Houser*, 678 N.E.2d at 100. To demonstrate credibility, an informant's statement must have "so far tended to subject the declarant to civil or criminal liability that a reasonable person in the declarant's position would not have made the statement." *Newby v. State*, 701 N.E.2d 593, 599 (Ind.Ct.App.1998) (quoting *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997)). The reason we find such statements have credibility is that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

In the following circumstances, Indiana appellate courts have held an informant's statement was sufficiently against his penal interest to demonstrate credibility. An informant was credible when, while informing police that drugs could be found at the defendant's house, he implicated himself in the manufacture of methamphetamine with the defendant at the defendant's house. *Iddings*, 772 N.E.2d at 1014. An informant had credibility when he implicated himself in conspiracy to commit robbery with the defendant. *Houser*, 678 N.E.2d at 100. Hearsay was reliable when the informant admitted committing burglary and delivering the stolen goods to the defendant's house. *Nash v. State*, 433 N.E.2d 807, 810 (Ind.Ct.App.1982). An informant who possessed drugs provided credible information about his source when he implicated himself in a plan to deliver to someone else the drugs he obtained from the source, making himself guilty of possession with intent to deliver rather than just possession. *Creekmore v. State*, 800 N.E.2d 230, 235 (Ind.Ct.App.2003).

█ Snover acknowledges that declarations against one's interest can demonstrate credibility, but he disagrees that

Hammond's statement was against his own penal interest. Given the facts as explained in the search warrant affidavit, we must agree with Snover.

Police arrested Hammond on an outstanding warrant. During the search incident to that arrest, police found drugs in Hammond's car. After police had already found the drugs, Hammond volunteered the information that Snover was his source for the drugs. Hammond did not implicate himself in any additional crimes by revealing his alleged dealer. *See Newby*, 701 N.E.2d at 600 ("Calloway had already been caught with drugs in his possession, and his decision to reveal his source to the police did not subject him to any additional criminal liability."). Accordingly, Hammond's statement was not against his penal interest and thus did not demonstrate he was a credible source of information. *See id.*

█ Nor does the other information in the affidavit demonstrate Hammond's credibility. Hammond reported Snover's correct address; however knowing someone's address is not indicative of having any "inside" information. *See Best v. State*, 821 N.E.2d 419, 426–27 (Ind.Ct.App. 2005) (informant's ability to describe the property did not demonstrate credibility), *reh'g denied, trans. denied.* Hammond claimed Snover had additional drugs in his bedroom; however the police made no attempts to corroborate that information. Corporal Ballard learned Snover had been arrested four years earlier for possession of marijuana; however an arrest without a conviction is not proof of prior possession. *See Pickens v. State*, 767 N.E.2d 530, 534 (Ind.2002) ("a record of arrests does not establish the historical fact of prior criminal behavior").

██ The only remaining evidence is the four-month-old report from an un-

named confidential source indicating Snover was selling methamphetamine from his residence. While stale information alone may not support a finding of probable cause, it may be considered as "part of the totality of the circumstances creating probable cause." *Cheever–Ortiz v. State*, 825 N.E.2d 867, 872 (Ind.Ct.App.2005).

Corporal Ballard asserts in his affidavit the informant is "a confidential source who had provided information in the past which was determined to be credible and reliable." (App. at 23.) However, he provides no evidence by which the issuing judge could have determined the confidential informant had credibility. *Bryant v. State*, 655 N.E.2d 103, 108 (Ind.Ct.App. 1995) ("in determining whether the information constitutes probable cause, we cannot disregard the well-established principle that the affidavit contain underlying facts to support a determination of probable cause"). *See also Wood v. State*, 592 N.E.2d 740, 744 (Ind.Ct.App.1992) ("The bare conclusory and hearsay statement that affiant was told by Officer X that the informant had provided reliable information will not suffice for the requirement … that the affidavit 'contain reliable information establishing the credibility of the source.' ").

It is unclear from the language in Corporal Ballard's affidavit whether the confidential informant had provided reliable information on one occasion or on multiple occasions. Accordingly, the information in paragraph three of Corporal Ballard's affidavit had no value for determining whether probable cause existed to issue the search warrant.

Because the affidavit did not demonstrate the credibility of either Hammond or the confidential informant, and did not contain other information corroborating their reports, probable cause did not exist to support issuing a search warrant for Snover's house. The issuing judge and the trial court judge erred to the extent they so found.

2. *Good Faith Exception*

Generally speaking, evidence obtained without a valid warrant, and without circumstances justifying the failure to obtain a warrant, is inadmissible at trial. *Newby*, 701 N.E.2d at 602. Exclusion is not required, however, if the evidence was seized "in reliance on a defective search warrant if the police relied on the warrant in objective good faith." *Id.* Our legislature has codified this exception:

(a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

(b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

(1) it is obtained pursuant to:

(A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or

(B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and

(2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules

adopted by the law enforcement training board under IC 5–2–1–9.

Ind.Code § 35–37–4–5.

 The good faith exception is not available when "(1) the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; or (2) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Jaggers v. State,* 687 N.E.2d 180, 184 (Ind.1997).

Snover acknowledges "[t]he first exception has no applicability" (Appellant's Br. at 9), as there is no allegation Corporal Ballard attempted to mislead the issuing judge with his affidavit. However, Snover believes the good faith exception is unavailable due to the second clause.[4]

Regarding the second reason the good faith exception may be unavailable, we have explained:

> The exclusionary rule is designed to deter police misconduct, and in many cases there is no police illegality to deter. Although the magistrate or judge is responsible for determining whether an officer's allegations establish probable cause, an officer's reliance on the magistrate's probable-cause determination must be objectively reasonable. The [*United States v.*] *Leon* [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)] Court emphasized that the objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. In some circumstances an officer will have no reasonable grounds for believing that

the warrant was properly issued. Depending on the circumstances of the particular case, a warrant may be so facially deficient that the executing officers cannot reasonably presume it to be valid. *Hensley v. State,* 778 N.E.2d 484, 489 (Ind. Ct.App.2002).

While we find the warrant on which police relied to search Snover's residence was not supported by probable cause, we cannot characterize it as so facially deficient that the executing officers could not reasonably presume it to be valid. Accordingly, we affirm the denial of Snover's motion to suppress and the admission of the evidence found at his house.

Affirmed.

ROBB, J., concurs.

KIRSCH, C.J., concurs in result with separate opinion.

KIRSCH, Chief Judge, concurring in result.

I believe the totality of the circumstances here presented is sufficient for a reasonably prudent person to conclude that search of Snover's premises would uncover evidence of a crime. Accordingly, while I agree with my colleagues that Snover's convictions should be affirmed, I do so on other grounds.

The United States Supreme Court has held that uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. *Illinois v. Gates,* 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The federal test for ensuring the reliability of a

---

4. Snover compares his case to *Newby* to support his argument the good faith exception should not apply. However, as Snover notes, the affiant in *Newby* failed to inform the issuing judge "the informant was told that if he

didn't reveal his drug source, he would be prosecuted." (Appellant's Br. at 10.) As Snover also admitted Corporal Ballard's affidavit was not misleading, we find his reliance on *Newby* misplaced.

hearsay statement in a probable cause determination allows the use of hearsay only if the totality of the circumstances corroborates the hearsay. *Id,* 462 U.S. at 230–31, 103 S.Ct. 2317. The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind. 1997).

Further, Indiana Code § 35–33–5–2(b) provides:

When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Here, Elkhart police found Kelly Hammond in possession of suspected methamphetamine. Hammond admitted the drugs were his and that it was an eighth of an ounce. He stated that he purchased the drugs from Donald Snover in an upstairs bedroom at Snover's residence for $125 just prior to the traffic stop. He provided the address of the residence and stated that he personally observed that Snover was in possession of methamphetamine and marijuana. The address provided by Hammond was independently verified by police as Snover's residence. The evidence provided by Hammond was consistent with evidence police had obtained in a drug investigation in which a confidential informant who had provided credible information in the past, stated that Snover was dealing methamphetamine in an ongoing long-term operation from his residence—the same residence identified by Hammond.

To me, Hammond's statements to police qualified as statements against penal interest. Hammond admitted that the drugs were his and that he had just purchased them from Snover. Although the police had already discovered the drugs in Hammond's car, Hammond's statements to police clearly tended to subject him to criminal liability by removing any question that Hammond was in actual possession of the drugs. Moreover, even if they did not, Hammond's statements are corroborated by, and corroboration for, the statements which police had earlier obtained from their confidential informant. Thus, even if neither the statements made by the confidential informant nor by Hammond individually provide a sufficient basis for the determination of probable cause, taken together they are sufficient for a reasonably prudent person to conclude that a search of Snover's residence would produce evidence of a crime as, indeed, it did.