## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2015, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kevin R. Hewlate
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald Snover,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

October 30, 2015

Court of Appeals Case No.
20A03-1505-PC-320

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-0611-PC-28

**Brown, Judge.**

[1] Donald Snover appeals the denial of his petition for post-conviction relief. Snover raises one issue which we revise and restate as whether Snover was denied the effective assistance of appellate counsel. We affirm.

## *Facts and Procedural History*

[2] The relevant facts as discussed in Snover's direct appeal from his convictions of dealing in methamphetamine as a class A felony and possession of marijuana as a class D felony follow:

> On November 12, 2003, a routine traffic stop in Elkhart, Indiana, led to the arrest of the driver, Kelly Hammond, who had outstanding warrants for his arrest. Upon his arrest, Hammond admitted he had methamphetamine in the car, and a police search recovered four grams of methamphetamine. After *Miranda* warnings, Hammond gave a written and signed confession. Thereafter, without the police making any promises regarding his prosecution, Hammond told the police his source for the drugs was Donald Snover. Hammond reported Snover had additional drugs in his second floor bedroom at his house on Laurel Street in Elkhart.
>
> That same day, police prepared a search warrant affidavit that provided:
>
> > **The undersigned Affiant swears upon his oath that he believes and has good cause to believe that:**
> >
> > Certain evidence involved in the commission of the crime of possession of and/or use of and/or dealing in methamphetamine, cocaine, marijuana, or other controlled substances, or drug paraphernalia in violation of I.C. 35-48-4 et seq. is concealed in, on, or

about a residence situate[d] at **821 Laurel St., City of Elkhart, Elkhart County, State of Indiana, said premises being more particularly described as follows:** 821 Laurel St. is believed to be the residence of Donald W. Snover and is a two-story single family dwelling. The house has gray vinyl siding with white trim around the windows and doors and is on the southeast corner of Laurel and Plum. There are landscape timbers and bushes on the north side of the house, which surround a wooden porch. The numbers "821" are black and affixed vertically to the right of the front door. There is a black metal mailbox to the right side of the door and underneath the numbers. There is a wooden deck on the south side of the house. There is an attached garage on the east side of the house.

**This Affiant bases his belief and cause for belief on the fact that:**

**1.** The affiant is [a] police officer with the Elkhart Police Department and has been employed in that capacity for six (6) years. The affiant has participated in approximately twenty (20) drug investigations and arrests during his tenure. These investigations have led to the seizure of methamphetamine, crack cocaine and marijuana.

**2.** The affiant attended a gang conference and seminar in Chicago, Illinois. The gang school included training on numerous types of narcotics and hidden compartments. The affiant has also attended a seminar for drug investigations for the patrol officer.

**3.** On July 31, 2003, Investigator William Wargo from the Elkhart County Prosecutor's Office received drug intelligence in reference to 821 Laurel St. The intelligence was provided by a confidential source who had provided information in the past which was determined to be credible and reliable. The CS stated that Don Snover of 821 Laurel St. was dealing ounces of methamphetamine from his residence, indicating that this was an ongoing long-term operation.

**4.** On November 12, 2003, the affiant executed a traffic stop at the intersection of Nappanee St. and W. Beardsley in Elkhart County, Indiana. The affiant arrested the driver, Kelly Hammond, with a date of birth of July 8, 1960, on an outstanding Elkhart County warrant. During the search incident to lawful arrest, the affiant located a lunch box on the passenger's side floorboard. The lunch box contained a plastic bag containing approximately 4.0 grams of suspected methamphetamine. The methamphetamine later tested positive with the MDMA/methamphetamine test kit. Thereafter, after being advised of his statutory and constitutional rights, Kelly Hammond gave a statement against his own penal interests to Cpl. Ballard and Cpl. Buchmann. This statement was made after his arrest and without any promises or consideration being given to him by any law enforcement officer. In the statement, Kelly Hammond stated that the methamphetamine was his and it was one-eighth of an ounce. Kelly Hammond stated that he purchased the methamphetamine from Donald Snover for $125.00 just prior to the traffic stop. Kelly Hammond stated that he purchased the methamphetamine in an upstairs bedroom at

Snover's residence at 821 Laurel Street. Kelly Hammond further stated that at the same time of the purchase, he observed Donald Snover in possession of an additional quantity of controlled substances which he estimated to be approximately three-quarters of a pound of methamphetamine and one pound of marijuana.

**5.** The affiant researched the Elkhart Police Department RMS and located Donald Snover. Donald Snover is described as a white male with a date of birth of December 13, 1959. Donald Snover is also described as being 5'6", 135 lbs., with brown hair and green eyes. Donald Snover listed 821 Laurel St., Elkhart, Indiana as his address. The affiant also ran an Interstate identification Index/Criminal History on Donald Snover. The Criminal History stated that Donald Snover was arrested for Felony Possession of Marijuana on October 4th, 1999.

**6.** All of the aforesaid facts are within the personal knowledge of the Affiant and/or have been corroborated by the information and investigation specified above for the offenses of dealing in and/or possession of and/or use of methamphetamine and other controlled substances and that evidence of same is concealed in or about the above described premises which is within the County of Elkhart, State of Indiana. Further, the affiant has probable cause to believe that the information provided by Kelly Hammond is truthful and accurate based upon (1) the corroboration from the prior CS whose information indicated the presence of long-term drug trafficking by Donald Snover at his residence on Laurel Street and (2) the fact that the information was provided by Hammond without any consideration, included

statements made which were against his penal interests, and were provided by him with the knowledge that his identity would be disclosed.

**7.** Based upon the foregoing the affiant verily believes that a search of the residence identified in the paragraphs above will disclose the existence of: methamphetamine, cocaine, marijuana, narcotic drugs or other controlled substances, drug paraphernalia, drug ledgers or records of dealing in such controlled substances, money, scales used for weighing controlled substances, packaging materials for such substances, documents of residency, and/or other physical evidence indicative of possession of and/or use and/or dealing of cocaine, methamphetamine, marijuana, or controlled substances and paraphernalia.

(App. at 23-24.)

Based on that affidavit, a judge issued the search warrant. Police executed the warrant the night of November 12th and the early morning of November 13th. In Snover's bedroom, they found 280.70 grams of marijuana, 46.07 grams of methamphetamine, 464.42 grams of amphetamine, a triple-beam scale, an electronic scale, baggies, a tile with a line of drugs and a straw, $1,400 in cash, and a notebook resembling a drug ledger. Snover had $350 on his person.

*Snover v. State*, 837 N.E.2d 1042, 1045-1047 (Ind. Ct. App. 2005).

[3]     On November 17, 2003, the State charged Snover with dealing in methamphetamine as a class A felony and possession of marijuana as a class D felony. *Id.* at 1047. On December 28, 2004, Snover filed a motion to suppress

evidence and argued that the search warrant was not based upon reliable and credible information, was based upon stale information, and violated his rights.

[4] On January 3, 2005, the court held a hearing on the motion to suppress, and Snover's trial counsel argued as set forth in the motion, and stated that the issue was whether "the officers exercised bad faith in obtaining the search warrant." Trial Transcript at 182. The court asked what evidence of bad faith existed, and defense counsel responded that part of the information in the affidavit for the search warrant was stale and was used to "bootstrap the argument that a person who's reliability is unknown is sufficient . . . ." *Id.* at 183.

[5] After some discussion, the prosecutor asserted that paragraph 3 of the affidavit was not included to "bootstrap or to anything else as it relates to reliability of the information provided by Kelly Hammond other than to simply report to the magistrate that there had been other intelligence." *Id.* at 187. The prosecutor also argued that "it's not in any way used to attempt to mislead the magistrate or attempt to indicate that the reliability of the information provided by Hammond should be enhanced because of the information from July 31, 2003." *Id.* at 188. The prosecutor also noted that paragraph 4 of the affidavit included Hammond's identity and referred to a statement against his penal interest. The following day, the court denied the motion to suppress.

[6] A jury found Snover guilty of both counts. 837 N.E.2d at 1047. The court imposed concurrent sentences of thirty-five years for dealing methamphetamine and one-and-a-half years for possession of marijuana. *Id.*

[7] On direct appeal, Snover's appellate counsel filed a brief on June 6, 2005, and argued that the trial court should have suppressed the evidence found in Snover's home because the judge issuing the search warrant did not have a substantial basis to believe the statements in the affidavit in support of the application for the warrant established probable cause. Appellate counsel also argued that the good faith exception to the exclusion doctrine did not apply because the warrant was based on an affidavit so lacking in indicia or probable cause as to render belief in its existence unreasonable. The State argued that the warrant was either supported by probable cause or the evidence seized was admissible under the good faith exception in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984).

[8] This court observed that the credibility of an informant could be established by declarations against penal interest. 837 N.E.2d at 1048-1049. The court agreed with Snover that Hammond's statement was not against his penal interest and thus did not demonstrate he was a credible source of information, and that no other information in the affidavit demonstrated Hammond's credibility. *Id.* at 1049. The court observed that Corporal Ballard learned Snover had been arrested four years earlier for possession of marijuana but noted that an arrest without a conviction is not proof of prior possession. *Id.* The court then observed that the only remaining evidence was the four-month-old report from an unnamed confidential source indicating Snover was selling methamphetamine from his residence and that while stale information alone may not support a finding of probable cause, it may be considered as part of the

totality of the circumstances creating probable cause. *Id.* at 1049-1050. The court held that Corporal Ballard provided no evidence by which the issuing judge could have determined the confidential informant had credibility. *Id.* at 1050. The court further held that "[b]ecause the affidavit did not demonstrate the credibility of either Hammond or the confidential informant, and did not contain other information corroborating their reports, probable cause did not exist to support issuing a search warrant for Snover's house." *Id.*

[9] The court then addressed the good faith exception, concluding that "[w]hile we find the warrant on which police relied to search Snover's residence was not supported by probable cause, we cannot characterize it as so facially deficient that the executing officers could not reasonably presume it to be valid." *Id.* at 1050-1051. The court affirmed the admission of the evidence found at Snover's house. *Id.*

[10] Judge Kirsch concurred in result and concluded that Hammond's statements to police qualified as statements against penal interest. *Id.* at 1052. He also stated that even if neither "the statements made by the confidential informant nor by Hammond individually provide a sufficient basis for the determination of probable cause, taken together they are sufficient for a reasonably prudent person to conclude that a search of Snover's residence would produce evidence of a crime as, indeed, it did." *Id.*

[11] In 2014, Snover filed an amended petition for post-conviction relief and argued that his appellate counsel was ineffective for failing to argue that the State

waived the issue of whether the good faith exception applied because it did not assert the argument prior to appeal.

[12]     On January 8, 2015, the post-conviction court held a hearing. At the hearing, Snover's appellate counsel testified that he did not know whether he was aware of the case of *Merritt v. State* at the time he was working on the appeal and that he did not recall if he considered citing *Merritt*.

[13]     On April 28, 2015, the post-conviction court denied Snover's petition for relief. The order states in part:

> 30. In the instant case, [appellate counsel] testified that he did not recall being aware of the case of <u>Merritt v. State</u>, 803 N.E.2d 257 (Ind. Ct. App. 2004), and could not recall whether he considered it when filing the appeal . . . . There was, however, no additional questioning or testimony as to whether [appellate counsel] was unaware of the proposition of law that [Snover] claims <u>Merritt</u> stands for; to-wit: the good faith exception argument is waived if it is not raised by the State at the suppression hearing.

> 31. It is [Snover's] position that <u>Merritt</u> would have led to a winning argument on appeal had [appellate counsel] cited the case. This is not necessarily true. When reviewing a trial court's ruling on the validity of a search and seizure, the reviewing court considers the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. <u>Melton v. State</u>, 705 N.E.2d 564, 566 (Ind. Ct. App. 1999). A trial court's ruling on a motion to suppress may be affirmed if it is sustainable <u>on any legal grounds apparent in the record</u>. (Emphasis added). <u>Robinson v. State</u>, 730 N.E.2d 185, 192 (Ind. Ct. App. 2000), *citing* <u>Alford v. State</u>, 699 N.E.2d 247, 250 (Ind. 1998).

32. Similarly, in the instant case, this court found that probable cause existed in the search warrant affidavit; the Indiana Court of Appeals disagreed; however, determined that the evidence was admissible under another legal ground apparent in the record. Two [judges] found it admissible under the good faith exception, and C.J. Kirsch, writing separately, agreed with the trial court's determination that probable cause existed owing to statements in [sic] penal interests. Snover, 837 N.E.2d 1051-52. Essentially, the Court found that the search warrant in [Snover's] case was not so facially deficient that the executing officers could not reasonably presume it to be valid. Snover at 1051.

33. While the post conviction record establishes that [appellate counsel] was not aware of the Merritt decision, he did address a legal theory on appeal that was apparent in the trial record. The circumstances in the instant case are somewhat distinguishable from those in Merritt as the need to raise the good faith exception was not so obvious that the State or counsel would have reasonably raised it at the suppression hearing. This is particularly true since the trial judge and the three Indiana Court of Appeals [judges] who reviewed this case did not agree on the appropriate legal theory of admissibility, although all agreed the evidence was admissible. Therefore, it cannot be said that [appellate counsel] was ineffective for not challenging the admissibility of the evidence on every legal theory available. For these reasons, the court concludes that [Snover] has not met his burden of proving that there was a reasonable likelihood of a different outcome had [appellate counsel] done so. Accordingly, [Snover] has failed to prove that he received ineffective assistance of appellate counsel.

Appellant's Appendix at 115-116.

## *Discussion*

[14] Before discussing Snover's allegations of error, we observe that the purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. *Id.* Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Id.* The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was known and available but not raised on appeal, it is waived. *Id.*

[15] We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless

clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[16] Snover argues that his appellate counsel was ineffective because he failed to argue that the good faith exception was waived, noting that his appellate counsel failed to cite *Merritt v. State*, 803 N.E.2d 257 (Ind. Ct. App. 2004), which held that the State's argument on appeal that seized evidence was admissible under the good faith exception to the warrant requirement was waived because the State did not advance the argument in its memorandum in opposition to the motion to suppress or at the suppression hearing. Snover points out that *Merritt* was decided on February 13, 2004, well before his appellate counsel filed a brief on June 6, 2005. He asserts that no other case contradicts the holding in *Merritt* and that the State did not raise the good faith exception to the trial court. He contends that his appellate counsel should have cited *Merritt* and argued that the issue was waived, that his appellate counsel's failure to raise *Merritt* was not strategic, and that he was prejudiced.

[17] The State argues the post-conviction court appropriately observed that appellate counsel's lack of familiarity with *Merritt* does not equate with ignorance about when a waiver argument is available, and that it did not waive its good faith claim because it asserted it at the suppression hearing. The State also argues

that *Merritt* appears to be inconsistent with Ind. Code § 35-37-4-5[1] and that the statute places an obligation on the trial court, in its discretion, to exclude evidence if it finds that officers did not act in good faith, concluding that appellate counsel was not deficient for not arguing waiver because it was unclear whether the State was required to affirmatively assert good faith. It also posits that Snover was not prejudiced because a trial court's decision to admit or exclude evidence is sustainable on any basis in the record and that this court was free to affirm Snover's convictions based on good faith regardless of whether the State affirmatively asserted it.

---

[1] Ind. Code § 35-37-4-5 is titled "Evidence unlawfully obtained by officer in good faith; exclusion" and provides:

> (a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

> (b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

>> (1) it is obtained pursuant to:

>>> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or

>>> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and

>> (2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5-2-1-9.

> (c) This section does not affect the right of a person to bring a civil action against a law enforcement officer or a governmental entity to recover damages for the violation of his rights by an unlawful search and seizure.

[18] In his reply brief, Snover states that any argument by the prosecutor focused on the actions of police in obtaining the search warrant and that this argument was based on *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), which is an entirely separate argument from the good faith exception based on *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), and which focuses on the action of the police after the search warrant is issued.

[19] Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.* We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001).

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986).

Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-195 (Ind. 1997), *reh'g denied*, *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998). Snover asserts that his appellate counsel was ineffective because he did not "competently present the issue of whether the evidence seized as part of the execution of the search warrant was properly admitted." Appellant's Brief at 6. He states that his appellate counsel properly raised the suppression issue and "just failed to argue that the good faith exception was waived." *Id.* at 7. He concedes that "[c]laims of inadequate presentation of certain issues, when such were not deemed waived in the direct appeal, are the most difficult to advance." *Id.* (citing *Bieghler*, 690 N.E.2d at 195).

Indeed, in *Bieghler*, the Indiana Supreme Court held that "[c]laims of inadequate presentation of certain issues, when such were *not* deemed waived in the direct appeal, are the most difficult for convicts to advance and reviewing tribunals to support." *Bieghler*, 690 N.E.2d at 195. The Court expressed two reasons for this proposition. First, "these claims essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision," and "this kind of ineffectiveness claim, as compared to the others mentioned, most implicates concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction." *Id.* "Second, an Indiana appellate court is not limited in its review of issues to the facts and cases cited and arguments made by the appellant's counsel." *Id.* The Court expanded on the second reason by stating:

> We commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party. While impressive appellate advocacy can influence the decisions appellate judges make and does make our task easier, a less than top notch performance does not necessarily prevent us from appreciating the full measure of an appellant's claim, or amount to a "breakdown in the adversarial process that our system counts on to produce just results," *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069.

*Id.* at 195-196 (some internal citations omitted). "For these reasons, an ineffectiveness challenge resting on counsel's presentation of a claim must

overcome the strongest presumption of adequate assistance." *Id.* at 196. "Judicial scrutiny of counsel's performance, already 'highly deferential,' *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind. 1995), is properly at its highest." *Id.* "Relief is only appropriate when the appellate court is confident it would have ruled differently." *Id.*

[23] In *Merritt,* this court addressed whether a trial court erred in denying the defendant's motion to suppress. 803 N.E.2d at 258. We observed that the State argued on appeal that even if probable cause was lacking, the evidence seized was admissible under the good faith exception to the warrant requirement. *Id.* at 261. We also observed that the State did not advance this argument in its memorandum in opposition to the motion to suppress or at the suppression hearing and that, "[a]ccordingly, the issue is waived." *Id.* (citing *Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999) (finding that a party is limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal)).

[24] Even assuming that appellate counsel was deficient in failing to cite *Merritt*, we cannot say that the prosecutor failed to argue good faith or waived the argument. The good faith exception was enunciated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). Generally, the exclusionary rule "does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009) (citing *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984)). The good faith exception is not available in some

situations, including where (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or (2) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923, 104 S. Ct. 3405).

To the extent Snover asserts that the argument made by the prosecutor focused on the actions of the police in obtaining the search warrant and *Franks v. Delaware*, and not the good faith exception which focuses on the police actions after the search warrant is issued and is based upon *United States v. Leon*, we will discuss these cases.

In *Franks*, the United States Supreme Court addressed whether a defendant in a criminal proceeding ever has the right under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant. 438 U.S. at 155, 98 S. Ct. at 2676. The Court held:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish

> probable cause, the search warrant must be voided and the fruits
> of the search excluded to the same extent as if probable cause
> was lacking on the face of the affidavit.

*Id.* at 155-156, 98 S. Ct. at 2676.

[27]　In *Leon*, the United States Supreme Court addressed "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900, 104 S. Ct. at 3409. The Court cited *Franks* multiple times and discussed the good faith of the officers applying for the warrant as well as the officers executing the warrant. The Court held that the suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule. *Id.* at 918, 98 S. Ct. at 3418. The Court observed that where the official action was pursued in complete good faith, the deterrence rationale behind the exclusionary rule loses much of its force. *Id.* at 919, 98 S. Ct. at 3418-3419. The Court held that once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. *Id.* at 921, 98 S. Ct. at 3419. The Court also observed that penalizing the officer for the magistrate's error, rather than his own, could not logically contribute to the deterrence of Fourth Amendment violations. *Id.* The Court noted:

References to "officer" throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.

*Id.* at 923 n.24, 98 S. Ct. at 3420 n.24. The Court cited *Franks* and held: "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923, 98 S. Ct. at 3421 (citing *Franks*, 438 U.S. 154, 98 S. Ct. 2674). The Court concluded: "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 98 S. Ct. at 3422.

[28] At the hearing on Snover's motion to suppress, the prosecutor responded to the argument of Snover's trial counsel that the officers exercised "bad faith" in obtaining the search warrant. Trial Transcript at 182. Specifically, the prosecutor argued that paragraph 3 of the affidavit was not included to "bootstrap or to anything else as it relates to reliability of the information provided by Kelly Hammond other than to simply report to the magistrate that

there had been other intelligence." *Id.* at 187. The prosecutor also argued that "it's not in any way used to attempt to mislead the magistrate or attempt to indicate that the reliability of the information provided by Hammond should be enhanced because of the information from July 31, 2003." *Id.* at 188. The prosecutor also maintained that paragraph 4 of the affidavit included Hammond's identity and referred to a statement against his penal interest. Given the discussion in *Leon*, we cannot say that the prosecutor failed to raise the good faith exception. Accordingly, we cannot say that Snover demonstrated a reasonable probability that, but for appellate counsel's failure to cite *Merritt*, the result of the proceeding would have been different.

## *Conclusion*

[29] For the foregoing reasons, we affirm the post-conviction court's denial of Snover's petition for post-conviction relief.

[30] Affirmed.

Riley, J., and Altice, J., concur.